UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| ANTONIO BURNS, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:10-cv-42 |
| v. | ) | |
| | ) | *Collier / Lee* |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Antonio L. Burns brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying him supplemental security income ("SSI") benefits. Plaintiff and Defendant have filed cross motions for summary judgment [Doc. 22, Doc. 24]. Plaintiff seeks a remand to the Commissioner and argues the Administrative Law Judge ("ALJ") should have found that he was disabled due to mental retardation.

For the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for summary judgment [Doc. 22] be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 24] be **GRANTED**; and (3) the decision of the Commissioner be **AFFIRMED**.

**I.     ADMINISTRATIVE PROCEEDINGS**

On October 29, 2007, at the age of 24, Plaintiff filed for SSI benefits, alleging he became disabled on June 1, 2007 due to "hep[atitis] C, enlarged liver, [and] poor circulation (Transcript ("Tr.") 61-66, 67-71, 75-76). His claim was initially denied in March 2008 and was again denied upon reconsideration four months later in June 2008 (Tr. 23-27, 30-32). Plaintiff requested a

hearing, which was held on May 6, 2009 (Tr. 36-37, 320-31). Plaintiff, who appeared in person and was represented by an attorney at the hearing, alleged he had acute panic attacks, high blood pressure, pain in his right hand, and poor circulation in his left leg (Tr. 322-30). The ALJ issued an unfavorable decision on August 4, 2009, finding Plaintiff was not disabled (Tr. 10). Plaintiff appealed that decision but the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner (Tr. 1, 4). Plaintiff filed the instant action seeking a remand arguing that he is mentally retarded and is therefore presumptively disabled [Doc. 2 at PageID#: 13].

## II. FACTUAL BACKGROUND

Plaintiff does not dispute the ALJ's findings regarding his physical impairments or mental impairments other than mental retardation. Therefore, the facts recited herein will focus on Plaintiff's alleged mental retardation and not his other physical and mental impairments.

### A. Education and Background

Plaintiff completed the twelfth grade in 2001 receiving a special education diploma (Tr. 81, 323). Plaintiff worked as a McDonald's burger cook from either 2000-2003 or 2001-2004, as a manual laborer in the construction industry from 2004-2006, and as a stock boy in 2007 (Tr. 77, 107). Plaintiff quit his most recent job as a janitor/cleaner for Pro Clean (Tr. 323-24), and the ALJ concluded he had not performed substantial gainful activity since June 1, 2007 (Tr. 12).

At a hearing on May 6, 2009, Plaintiff testified that he has three children whom he spends time with every weekend (Tr. 327), and that he currently resides with his blind mother (Tr. 323, 326). Before his illness, Plaintiff enjoyed playing basketball, riding his bike, fishing, and dancing (Tr. 94, 96). Plaintiff alleges he can no longer participate in these activities because of his illness

(Tr. 93). Instead, Plaintiff gets out of the house for about six hours per day and enjoys going to football games (Tr. 93-94). He and his father spend time together watching movies and going to the park (Tr. 94-95).

  **B.** **Medical Records**

In September 2007, the Tennessee Clinically Related Group ("CRG") performed an initial assessment of Plaintiff regarding his level of impaired function due to mental illness (Tr. 234-36). The CRG found Plaintiff to have a "mild or moderate mental disorder" and issued Plaintiff a General Assessment of Functioning score of 55 (Tr. 236).

In February 2008, Plaintiff submitted to a consultative exam by David Thompson, M.A. (Tr. 162-67). During the examination, Plaintiff asserted he had been suffering from depression and anxiety for the preceding six years and he had experienced anxiety-related symptoms for two years (Tr. 163). Mr. Thompson administered psychological testing in the form of the Wechsler Adult Intelligence Scale - Third Edition test ("WAIS-III") (Tr. 165-66). Plaintiff received a full scale IQ score of 63, a Verbal IQ score of 63, and a Performance IQ score of 70 (Tr. 165). Mr. Thompson noted that these scores were indicative of "intellectual functioning in the mild range of mental retardation" (Tr. 166). Mr. Thompson opined Plaintiff's "behavior is consistent with limited overall cognitive abilities" (Tr. 166). Mr. Thompson further opined Plaintiff was moderately limited in his ability to understand and remember as well as moderately limited in his ability to adapt to changes and requirements, and that Plaintiff was slightly limited in his ability to sustain concentration and persistence and interact with others (Tr. 167). Mr. Thompson diagnosed Plaintiff with an adjustment disorder and mild mental retardation (Tr. 167).

Shortly after his examination with Mr. Thompson, Plaintiff was admitted to Erlanger

3

Hospital's emergency center on February 29, 2008, suffering from an acute panic attack (Tr. 168-74). Plaintiff was discharged under a diagnosis of "acute anxiety reaction" and prescribed Xanax (Tr. 169). In March 2008, Plaintiff was admitted into Parkridge Hospital's emergency center complaining of uncontrolled shaking and an anxiety attack (Tr. 175-86).[1]

In March 2008, Fawz E. Schoup, Ph.D., reviewed Plaintiff's file for the state agency (Tr. 187-204). Dr. Schoup designated Plaintiff as having "organic mental disorders," "affective disorders," and "substance addiction disorders" (Tr. 187). Dr. Schoup indicated Plaintiff was moderately limited in daily life activities and social functioning and would have moderate difficulties in maintaining concentration, persistence, and pace (Tr. 197). Dr. Schoup found Plaintiff to have borderline intellectual functioning based on his adaptive functioning and work history (Tr. 187-88, 191, 199).

In June 2008, P. Jeffrey Wright, Ph.D., also reviewed Plaintiff's records for the state agency (Tr. 247-64). Dr. Wright noted Plaintiff's diagnosis of adjustment disorder with anxiety and depression and also noted Plaintiff had a substance addiction disorder (Tr. 250, 252, 255). Like Dr. Schoup, Dr. Wright indicated Plaintiff experienced borderline intellectual functioning (Tr. 248). Pointing out that Plaintiff cooks, does light household chores, and shops (with help with his finances), Dr. Wright opined Plaintiff functions with mild to moderate limitations and exhibits "no indication of [mental retardation]" (Tr. 259). Dr. Wright further opined that Plaintiff can understand and remember simple tasks and can adapt to infrequent change but will have some difficulty interacting with the public, supervisors and co-workers and will have some difficulties with

---

[1] At the hearing before the ALJ, Plaintiff testified to having panic attacks three or four times a month, which caused him to lose his memory and have "pseudo seizures" (Tr. 324-26).

4

concentration and persistence (Tr. 263).

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility for Disability Benefits

The Social Security Administration determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment-i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities-the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

### B. ALJ's Application of the Sequential Evaluation Process

At step one of this process, the ALJ found Plaintiff had not engaged in any substantial gainful activity since June 1, 2007 (Tr. 12). At step two, the ALJ found Plaintiff had "severe impairments" including: Hepatitis C; enlarged liver; right hand and left leg problems; hypertension;

5

depression; anxiety; and poor circulation (Tr. 12). The ALJ determined these impairments "cause some vocationally relevant limitations" and therefore found them to be "severe" (Tr. 12). At step three, of chief importance here, the ALJ found Plaintiff did not have any impairment or combination of impairments that would meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App'x. 1 § 12.05 (Tr. 12). More specifically, the ALJ found Plaintiff's mental impairments did not meet or medically equal the criteria of Listings 12.02, 12.04, or 12.06 (Tr. 13). The ALJ then determined Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but he limited Plaintiff to unskilled work with limited interaction with the general public (Tr. 13). At step four, the ALJ found Plaintiff had the RFC to perform his past relevant work and thus was not disabled (Tr. 16).

## IV. ANALYSIS

Plaintiff challenges the ALJ's decision at step three of the evaluation process. He contends the ALJ erred by failing to consider whether he met Listing 12.05C, which is specifically designed for mildly mentally retarded individuals with "additional and significant work-related limitation of function." *See Brown v. Sec'y of Health & Human Servs.*, 948 F.2d 268, 270 (6th Cir. 1991); 20 C.F.R. Pt. 404, Subpt. P, App'x. 1 § 12.05.

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters*, 127 F.3d at 528). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (quoting *Richardson v. Perales*, 402 U.S. 389,

6

401 (1971)). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Id.* (internal quotes omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decisionmakers because it presupposes there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sep. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claim of error without further argument or authority may be considered waived).

### B.     Listing 12.05C

At the third step in the disability evaluation process, a claimant will be found disabled if his impairment meets or equals one of the listings in the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  The claimant bears the burden of proving every element of the listing.  *King v. Sec'y Health & Human Servs.*, 742 F.2d 968, 974 (6th Cir. 1984).

While the ALJ explicitly referenced Listings 12.02, 12.04 and Listing 12.06 in his decision, he did not explicitly consider Listing 12.05  (Tr. 13).  Plaintiff contends the ALJ should have considered Listing 12.05C and should have found he met the requirements of that listing.  Listing 12.05 states:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.  The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . . .
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; . . . .

20 C.F.R. Pt. 404, Subpt. P, App'x. 1 § 12.05.  As Plaintiff argues, if he met or equaled the criteria of Listing 12.05C, then the sequential evaluation process should have ended at step three with a finding of disability.[2]  *See Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).

The Commissioner argues the ALJ addressed the issues relevant to Listing 12.05C and

---

[2] If the listing is met, the finding of disability is final even if Plaintiff possesses the RFC to perform some types of work.  *See Bowen v. Yuckert*, 482 U.S. 137, 141 (1987) ("If the impairment meets or equals [the listing], the claimant is conclusively presumed to be disabled."); *Shaw v. Chater*, 221 F.3d 126 (2d Cir. 2000) (claimant establishes an "irrebuttable presumption" of disability when she meets or equals a listing).

8

reasonably found Plaintiff had borderline intellectual functioning, not mental retardation, and that finding was supported by substantial evidence [Doc. 25 at PageID #: 69-73]. The Commissioner further argues that even if the ALJ erred in not discussing Listing 12.05C, the error is harmless [*id.* at PageID #: 73-74]. For the reasons discussed below, I **FIND** that the ALJ decision is proper and supported by substantial evidence.

To qualify for Listing 12.05C, a claimant must: (1) have a valid IQ score of 60 to 70, (2) have other "severe" impairments, and (3) meet the "diagnostic description" found in the introductory paragraph of the listing (i.e., "significantly subaverage general intellectual functioning with deficits in adaptive functioning before age 22"). *Foster v. Halter*, 279 F.3d 348, 354-55 (6th Cir. 2001). The Court will address, in order, each of the three requirements.

### 1. Valid IQ Score of 70 or Less

Both Plaintiff's full scale IQ and verbal IQ scores of 63 qualify under Listing 12.05C. Mr. Thompson administered the WAIS-III test on February 11, 2008 and Plaintiff received a verbal IQ score of 63; a performance IQ score of 70; and a full scale IQ score of 63 (Tr. 162-67). The validity of these scores is not disputed. Listing 12.05C requires only a valid verbal, performance, or full scale IQ of 60 through 70 and the Commissioner is required to take the lowest of the scores. 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.00 at D ("In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full-scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05."); *Tullius v. Astrue*, No. 2:10-cv-00455, 2011 WL 839259, at *5 (S.D. Ohio Mar. 4, 2011). Therefore, the relevant IQ score for purposes of the listing requirement is Plaintiff's full scale IQ or verbal IQ score of 63, either of which would satisfy the listing requirement. I **FIND** that Plaintiff satisfies this requirement.

### 2. Other Severe Impairments

There is no dispute that Plaintiff suffered from an impairment significantly limiting a work-related function. A claimant must show, along with an IQ score of 60 through 70, a "physical or other mental impairment imposing an additional and significant work-related limitation of function" in order to meet the requirements set out in Listing 12.05. 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 12.05C. A court will find such a physical or mental impairment "if a claimant is not working and is suffering from a severe impairment." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 438 (6th Cir. 2010). An individual without severe impairments will not be found to be disabled under the listing. 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 12.05C; *Coldiron*, 391 F. App'x at 438.

The ALJ noted that Plaintiff suffers from the following "severe" impairments that cause "some vocationally relevant limitations": Hepatitis C; an enlarged liver; right hand and left leg problems; hypertension; depression; anxiety; and poor circulation (Tr. 12). Plaintiff does not currently work due to these impairments, and the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 1, 2007 (*id.*). Accordingly, I **FIND** that Plaintiff meets the "severe impairments" requirement of the listing.

### 3. Diagnostic Description

Because Plaintiff satisfies the first two criteria, the ALJ was required to consider Listing 12.05C if there was a "substantial question" as to whether the Plaintiff satisfied the diagnostic description.[3] For the reasons discussed below, I **FIND** that there was not.

---

[3] The diagnostic description requirement is appropriate because if, hypothetically speaking, a claimant suffered from intellectual impairments arising after the age of 22, that claimant will not meet Listing 12.05C but could possibly meet another listed impairment. In that case, requiring the ALJ to explicitly state why the claimant does not meet Listing 12.05C while also stating why the claimant does meet another listed impairment would be a waste of time.

The diagnostic description of Listing 12.05C contains three separate requirements. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. In addition to meeting the criteria in one of the sections (A, B, C, or D), a claimant must prove: (1) he suffers from "significantly subaverage general intellectual functioning," (2) he suffers from "deficits in adaptive functioning," and (3) these deficits in adaptive functioning initially manifested before age 22. *Daniels v. Comm'r of Soc. Sec.*, 70 F. App'x 868, 872 (6th Cir. 2003).

Plaintiff's IQ score is sufficient to establish significant subaverage intellectual functioning. The text of Listing 12.05B-D provides IQ scores with which to measure the level of intellectual functioning. Thus, an IQ score of between 60 and 70, as provided in Listing 12.05B-D, must be adequate to satisfy the "significant" level of subaverage intellectual functioning as required in the introductory paragraph. If a more strict level of IQ was required to satisfy the "significant" standard, the listing would exclude claimants the drafters clearly wanted to include.

There is, however, little evidence showing Plaintiff suffers from "deficits in adaptive functioning" and there is substantial evidence showing Plaintiff does *not* suffer from such deficits. A loss of adaptive functioning is "manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R., Pt. 404, Subpt. P, App'x 1 § 12.00 at C(4). Plaintiff bears the burden of showing he had "deficits in adaptive functioning" before age 22. *Foster*, 279 F.3d at 354. The Social Security Administration has yet to quantify how severe the "deficits" must be in order for a claimant to qualify as mentally retarded, *Walls v. Astrue*, 561 F.3d 1048, 1074 (10th Cir. 2009), but this Court has previously indicated the deficits must be more than "potential" or "moderate." *Payne v. Comm'r of Soc. Sec.*, No. 3:07-CV-251, 2008 WL 2894482, at *4 (E.D. Tenn. Jul. 23, 2008). The Supreme Court of the

11

Case 1:10-cv-00042-CLC-SKL   Document 26   Filed 09/07/11   Page 11 of 15   PageID #: 86

United States, quoting from the Manual of Mental Disorders, described adaptive deficits as "a person's effectiveness in areas such as social skills, communication, daily living skills, and how well the person meets the standards of personal independence and social responsibility expected of his or her age by his or her cultural group." *Heller v. Doe by Doe*, 509 U.S. 312, 329 (1993). Activities such as cleaning, shopping, cooking, and maintaining a residence are considered "adaptive activities" under the applicable regulation. 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.00C(1).

The record indicates Plaintiff is able to help his mother with cleaning, including ordinary chores like vacuuming and sweeping (Tr. 326); he visits with his children every weekend (Tr. 327); he frequently spends time with his father and they go to the store, the park, and out to the movies (Tr. 94-95); he does not need help to go out (*id.*); he cooks and does laundry (Tr. 165); and he attends football and basketball games and goes to church (Tr. 94, 99, 119). There is also evidence in the record that Plaintiff sometimes forgets to comb his hair and brush his teeth (Tr. 93); needs help with shopping (*id.*); and does not handle money well because he gets confused when counting money (Tr. 98). Based on the evidence in the record, there is substantial evidence that Plaintiff did not experience deficits in adaptive functioning. While there is also evidence which could suggest such deficits, the weight of the evidence indicates Plaintiff was able to conduct his daily life activities in an appropriate manner, a conclusion supported by the opinions of Drs. Schoup and Wright and not inconsistent with the examination by Mr. Thompson, as all three found that Plaintiff was, at most, moderately limited in some areas.

Moreover, even if there was substantial evidence in the record to support a finding that Plaintiff had deficits in adaptive functioning, there is almost no evidence in the record of these deficits manifesting before age 22. Plaintiff argues that manifestation before age 22 can be

12

presumed because Plaintiff's IQ testing took place when was only 24, but the only evidence as to this issue are two assertions by Plaintiff that he graduated high school with a special education diploma (Tr. 81, 322-23). Plaintiff did successfully complete his education, however, and other evidence in the record would indicate that Plaintiff may have been functioning at a *higher* adaptive functioning level before age 22, as Plaintiff held two relatively long-term jobs from 2001 to 2004 and 2004 to 2006 (Tr. 15).

In addition, the ALJ's failure to explicitly address Listing 12.05C is not determinative of error if, in his decision, the ALJ did consider the issues relevant to Listing 12.05C. *Alcorn v. Astrue*, No. 5:07-212-DCR, 2008 WL 1790192, at *5 (E.D. Ky. Apr. 18. 2008) (noting that the ALJ does not have to explicitly consider Listing 12.05C in its opinion, but must consider "the results of the IQ tests and the issues of mental retardation"). Thus, in order to dismiss Listing 12.05C, the ALJ would have to find that one of the listing criteria was insufficiently met. I **FIND** that the ALJ adequately considered the issues relevant to the listing.

The ALJ stated as follows:

> In regards to [Plaintiff's] mental health impairments, while the consultative examiner found two slight limitations and two moderate limitations, there was no basis to find a mental limitation that would preclude the claimant from working. *Despite the fact that the consultative examination found that he was functioning in the mild range of mental retardation, his adaptive functioning, his work history, and his current work as a cook suggest that he was functioning more in the borderline range. Furthermore, his activities of daily living were adequate.* Also, the fact that he worked as a cook from January 2001 to February 2004 and as a construction laborer from April 2004 to June 2006 showed that his mental problems did not preclude him from working.

(Tr. 15) (emphasis added). In reaching this conclusion, the ALJ referenced Plaintiff's IQ scores and discussed the examination by Mr. Thompson and the opinions of Dr. Schoup and Dr. Wright,

13

affording the latter two opinions some weight because they were reasonable and supported by evidence in the record (*id.*). The ALJ did assign some relevant restrictions to Plaintiff's RFC based on his mental impairments, limiting him to simple, unskilled work with limited interaction with the general public (Tr. 15). Accordingly, I **FIND** that although the ALJ did not explicitly reference Listing 12.05C, the ALJ adequately considered the issues relevant to Listing 12.05C and determined that Plaintiff would not meet the requirements of the listing. As such, Plaintiff was not presumptively disabled due to mental retardation and the remainder of the ALJ's analysis – as to Plaintiff's physical impairments and RFC determination – is undisputed.

Accordingly, I **CONCLUDE** the ALJ did not err in failing to explicitly discuss Listing 12.05C because Plaintiff did not meet the requirements of that listing and the ALJ adequately addressed the relevant issues. Accordingly, remand of Plaintiff's claim for consideration of Listing 12.05C is unwarranted.

## V. CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, I **RECOMMEND** that:[4]

    (1)    Plaintiff's motion for summary judgment [Doc. 22] seeking remand under Sentence Four of 42 U.S.C. § 405(g) be

---

[4] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

**DENIED**.

(2)  The Commissioner's motion for summary judgment [Doc. 24] be **GRANTED**.

(3)  The Commissioner's decision denying benefits be **AFFIRMED**.

                                                                                s/ *Susan K. Lee*
                                                                                SUSAN K. LEE
                                                                                UNITED STATES MAGISTRATE JUDGE